# United States Court of Appeals
## For the First Circuit

No. 03-1406

ALTERNATIVE SYSTEM CONCEPTS, INC.,

Plaintiff, Appellant,

v.

SYNOPSYS, INC., SUCCESSOR TO
LANGUAGE FOR DESIGN AUTOMATION, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

John P. Griffith, with whom Griffith & Associates, PLLC was on brief, for appellant.
Chris Scott Graham, with whom Grace E. Jo and Dechert LLP were on brief, for appellee.

July 7, 2004

**SELYA**, **Circuit Judge**.   This is a case of a suitor scorned.   Plaintiff-appellant Alternative System Concepts, Inc. (ASC) courted Language for Design Automation, Inc. (LEDA) and forged a short-term distribution relationship.   As the couple moved toward a more durable bond, defendant-appellee Synopsys, Inc. acquired LEDA and dashed ASC's hopes.

The jilted suitor responded aggressively, haling Synopsys into court and claiming, inter alia, misrepresentation and breach of promise.   The district court dismissed the former claim early in the proceedings and subsequently granted summary judgment for Synopsys on the latter.   ASC appeals.   After addressing a number of issues (including an issue of first impression in this circuit concerning judicial estoppel), we affirm.

## I.  BACKGROUND

We rehearse the facts in the light most favorable to the nonmoving party (here, ASC) and draw all reasonable inferences in that party's favor.   Because there are differences between the ground rules that apply to motions to dismiss as opposed to motions for summary judgment, compare Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (explaining that the factual averments contained in the plaintiff's complaint supply the template for review of a decision granting a Rule 12(b)(6) motion to dismiss), with Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (explaining that the evidence of record supplies the template for

review of a decision granting a Rule 56 motion for summary judgment), we adjust for those differences in our ensuing discussion of the district court's rulings.

ASC is a New Hampshire corporation involved in the design and marketing of programs used in the production of computer chips. On March 29, 1999, it entered into a letter of understanding (the LOU) with LEDA, a French software designer. In the LOU, LEDA appointed ASC as the exclusive distributor of its Proton product line in the United States for a six-month term commencing April 1, 1999. The parties further declared that they would attempt to "negotiate in good faith a permanent agreement based on experiences during the term of th[e] LOU." That declaration was purely aspirational; the LOU stated expressly that neither party had any obligation to enter such a permanent agreement.

During the next six months, the two firms engaged in sporadic negotiations. On September 1, 1999, their representatives met in France in hopes of hammering out the details of a permanent arrangement. Although LEDA's managing director assured ASC that "all was satisfactory with regard to a permanent agreement," the parties neither developed nor signed a written contract. Later that month, the parties exchanged e-mails that apparently extended the geographic coverage of the LOU to Canada.

Talks continued past the LOU's expiration date (September 30, 1999). On October 5, representatives of the two companies met

in Florida. LEDA agreed to extend the LOU for a reasonable time pending the completion of negotiations. It also notified a prospective customer that ASC remained the exclusive distributor of LEDA products in the United States and Canada. ASC claims that the parties had by then substantially agreed on the key terms of a permanent distribution relationship, but the fact remains that LEDA balked at signing such an agreement.

In January of 2000, Synopsys (a California-based competitor of ASC) acquired LEDA. It promptly terminated the interim distribution agreement and broke off the negotiations for a permanent relationship. ASC was left out in the cold.

ASC lost little time in bringing this diversity action against Synopsys in New Hampshire's federal district court. See 28 U.S.C. § 1332(a). Its first amended complaint charged that LEDA had been derelict in its duty to negotiate a permanent distribution agreement in good faith; that LEDA had intentionally misrepresented the nature of its interactions with Synopsys; that LEDA had flouted an implied covenant of good faith and fair dealing; and that Synopsys bore responsibility for these transgressions as LEDA's successor in interest. Finally, the first amended complaint charged Synopsys, in its own right, with having interfered with ASC's advantageous contractual relations.

Synopsys moved to jettison the complaint for failure to state claims upon which relief could be granted. See Fed. R. Civ.

P. 12(b)(6).  On August 2, 2001, the district court dismissed the misrepresentation claim on the ground that ASC had not pleaded misrepresentation with the requisite particularity.  ASC v. Synopsys, Inc., No. 00-546, 2001 WL 920029, at *2 (D.N.H. Aug. 2, 2001) (ASC I).  Nevertheless, the court refused to dismiss the breach of contract claim.  See id.  A period of protracted pretrial discovery commenced.  Eighteen months later, the district court granted Synopsys's motion for summary judgment on the breach of contract count.[1]  ASC v. Synopsys, Inc., No. 00-546, 2003 WL 358737, at *3 (D.N.H. Feb. 19, 2003) (ASC II).  That ended the suit and precipitated this appeal.

In order to put the arguments on appeal into workable perspective, we pause to provide additional detail anent the lower court's treatment of ASC's breach of contract claim.  Count I of the first amended complaint alleged that "Synopsys/LEDA breached its agreement to negotiate a permanent agreement in good faith and to honor the Canadian distributorship."  In support of its motion to dismiss, Synopsys argued in relevant part that, to the extent this claim was premised on an oral contract entered into between the parties following the execution of the LOU, it was barred by the statute of frauds.  See N.H. Rev. Stat. Ann. § 506:2 (providing

---

[1]In other pretrial rulings, the district court dismissed ASC's implied covenant claim and granted summary judgment for Synopsys on ASC's interference claim.  ASC has not appealed from either of these decisions, so we need not probe them more deeply.

that "[n]o action shall be brought . . . upon any agreement . . . that is not to be performed within one year from the time of making it, unless such . . . agreement . . . is in writing"). In its opposition, ASC clarified that it was "not claiming that [LEDA/Synopsys] breached an agreement to enter into a long term contract." Rather, its breach of contract claim was "that LEDA breached its agreement to negotiate in good faith" as required by the LOU.

The district court took ASC at its word. Noting that ASC had explicitly abandoned any claim that the parties had entered a subsequent oral agreement, the court treated ASC's cause of action as one "that LEDA breached its contractual obligation to make a good faith effort to negotiate a permanent marketing agreement that initially covered the United States and later was amended to include Canada." ASC I, 2001 WL 920029, at *2 n.2. Since the court tentatively deemed the statute of frauds impuissant to defeat this cause of action, it denied the motion to dismiss the breach of contract count. Id. at *2.

By the time that discovery had run its course and the parties had gotten around to filing cross-motions for summary judgment, ASC had experienced an epiphany. In its summary judgment papers, it alleged that on October 5, 1999, the parties entered into an oral distribution agreement covering the United States and Canada. It also averred that LEDA/Synopsys subsequently breached

this permanent arrangement. Synopsys vociferously objected to this changed tune. It maintained that this approach evinced a new and inconsistent theory; that, throughout the litigation, ASC had construed its breach of contract claim as a claim for breach of a duty to negotiate in good faith; and that this tergiversation resulted in a theory that fell outside the purview of the first amended complaint.

The district court agreed with Synopsys's assessment. It invoked the doctrine of judicial estoppel, pointing out that ASC had obtained an "advantage by contending in opposition to Synopsys's motion to dismiss that its breach of contract claim was premised on an alleged breach of the LOU, rather than a subsequent oral agreement to make the LOU permanent." ASC II, 2003 WL 358737, at *3. Accordingly, the court held that ASC was barred from advancing a contradictory position on summary judgment. Id. The court thereupon granted brevis dispositon in favor of Synopsys.

On appeal, ASC contends that the lower court erred in (i) dismissing its misrepresentation claim, (ii) refusing to allow a further amended complaint designed to cure defects in the misrepresentation count, and (iii) invoking the doctrine of judicial estoppel to bar the breach of contract claim that it wished to propound on summary judgment.[2] Synopsys, by motion, asks

_____

[2]ASC also makes a perfunctory attempt to assert a theory of promissory estoppel. This theory was not presented to the district court in the summary judgment proceedings. Accordingly, we deem

-7-

us to (i) dismiss the appeal, and (ii) award sanctions against ASC. We address these points below, starting with Synopsys's motion to dismiss, then confronting ASC's asseverational array, and ending with a consideration of the request for sanctions.

## II.  THE MOTION TO DISMISS THE APPEAL

While this case was pending in the district court, Synopsys filed a California state court action accusing ASC of conspiracy and unfair business practices. On April 1, 2003 — shortly after the institution of this appeal — the parties reached at least a tentative settlement in the California action. There is some indication that the terms of the settlement contemplated the dismissal of the earlier (New Hampshire) action. After Synopsys encountered resistance from ASC with respect to implementing the supposed settlement, it asked the California court to enter judgment pursuant to the settlement agreement. The court obliged, albeit without discussion, entering judgment ex parte on September 11, 2003.

Citing these facts, Synopsys invites us to dismiss this appeal as moot and/or barred by the doctrine of res judicata.[3] ASC

---

the argument unpreserved. <u>See</u> <u>Teamsters Union</u> v. <u>Superline Transp. Co.</u>, 953 F.2d 17, 21 (1st Cir. 1992); <u>Clauson</u> v. <u>Smith</u>, 823 F.2d 660, 666 (1st Cir. 1987).

[3]Synopsys premises both mootness and res judicata on the same series of events. Since Synopsys directs virtually all of its legal argumentation to res judicata, we use that label to embrace both concepts.

counters by asserting that the settlement was never consummated. It also contends that the California judgment was entered without proper notice (and is, therefore, void).

We decline Synopsys's invitation to short-circuit this appeal. The record and briefing before us are too skimpy to allow a definitive determination as to either the status or scope of the ostensible settlement. By like token, the record is inadequate to permit us to assess the res judicata effect of the California judgment. Given the need for more information, we deem it prudent to sidestep the late-emerging res judicata issue and proceed directly to the merits. See, e.g., Henry v. Connolly, 910 F.2d 1000, 1004 (1st Cir. 1990) (deciding appeal on merits, favorably to appellees, without deciding whether action was barred by res judicata or lack of standing); see also Penobscot Nation v. Ga.-Pac. Corp., 254 F.3d 317, 324 (1st Cir. 2001) (discussing limits of Supreme Court plurality decision in Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)). Any other course would be an exercise in batrachomyomachia.

## III. THE MISREPRESENTATION CLAIM

ASC assigns error to both the district court's dismissal of its misrepresentation claim and to the court's subsequent "failure" to allow a curative amendment. These remonstrances need not occupy us for long.

## A. <u>Applicable Legal Standards</u>.

We review de novo a trial court's allowance of a Rule 12(b)(6) motion to dismiss. <u>LaChapelle</u> v. <u>Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir. 1998). In that process, we take as true the factual averments contained in the complaint, but "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." <u>Chongris</u>, 811 F.2d at 37 (citation and internal quotation marks omitted). From this plaintiff-friendly coign of vantage, we may affirm an order for dismissal only if no well-pleaded set of facts supports recovery. <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>LaChapelle</u>, 142 F.3d at 508.

Federal civil practice is based on notice pleading. Thus, "[g]reat specificity is ordinarily not required to survive a Rule 12(b)(6) motion." <u>Garita Hotel Ltd. P'ship</u> v. <u>Ponce Fed. Bank</u>, 958 F.2d 15, 17 (1st Cir. 1992); <u>accord</u> <u>Educadores Puertorriqueños en Acción</u> v. <u>Rey Hernández</u>, 367 F.3d 61, 66 (1st Cir. 2004) (disclaiming heightened pleading standards except where a statute or Civil Rule specifically imposes one). Cases alleging fraud — and for this purpose, misrepresentation is considered a species of fraud — constitute an exception to this general proposition. The Civil Rules explicitly require that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). In such cases, the pleader usually is expected to specify the who,

what, where, and when of the allegedly false or fraudulent representation.[4] Powers v. Boston Cooper Corp., 926 F.2d 109, 111 (1st Cir. 1991); McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980).

## B. The Original Claim.

ASC's first amended complaint alleged in substance that LEDA failed to disclose that merger talks were ongoing between it and Synopsys, but, rather, downplayed the discussions and characterized the contemplated relationship as merely a "technical partnership" that would not affect the outcome of the ASC-LEDA negotiations. ASC further alleged that it relied on these knowingly false representations to its detriment.[5] Despite the fervor with which ASC denounced this treachery, it did not provide any details as to who allegedly uttered the misleading statements, to whom they were made, where they were made, when they occurred, and what actions they engendered. See ASC I, 2001 WL 920029, at

---

[4] We say "usually" because there may be occasional exceptions, owing to extraordinary circumstances. See, e.g., Corley v. Rosewood Care Ctr., Inc., 142 F.3d 1041, 1050-51 (7th Cir. 1998). No such circumstances are extant here.

[5] Under New Hampshire law, the elements of a fraudulent misrepresentation claim are: "(1) the defendant misrepresented a material fact to the plaintiff, knowing it to be false; (2) the defendant did so with fraudulent intent that the plaintiff act on it; and (3) that the plaintiff, without knowledge of its falsity, detrimentally relied on the misrepresentation." Alexander v. Fujitsu Bus. Communic. Sys., Inc., 818 F. Supp. 462, 467 (D.N.H. 1993) (citing Proctor v. Bank of N.H., 464 A.2d 263, 265 (N.H. 1983)).

-11-

*2. In short, ASC's misrepresentation claim was wholly conclusory and lacking any semblance of specific detail. Given the strictures of Rule 9(b), the district court's dismissal of that barebones claim was entirely proper. See, e.g., Powers, 926 F.2d at 111; Lopez v. Bulova Watch Co., 582 F. Supp. 755, 766 (D.R.I. 1984).

## C. The Curative Amendment.

ASC's fallback position is as insubstantial as a house built upon the shifting sands. It notes that, after the district court had dismissed the misrepresentation claim for want of specificity, it moved for leave to refile, in a further amended complaint, a more particularized version of the claim. The district court denied this request on February 14, 2003, and ASC now calumnizes that order.

This challenge is based on a half-truth. Although ASC did seek leave to file a curative amendment, it unilaterally withdrew that motion before the court reached the matter. A party who voluntarily withdraws a motion prior to judicial consideration cannot later claim that the court's pro forma denial of the withdrawn motion constitutes reversible error. See Baty v. United States, 275 F.2d 310, 311 (9th Cir. 1960) (per curiam); cf. United States v. Tierney, 760 F.2d 382, 388 (1st Cir. 1985) ("Having one's cake and eating it, too, is not in fashion in this circuit.").

-12-

## IV. THE BREACH OF CONTRACT CLAIM

The district court, invoking the doctrine of judicial estoppel, consigned ASC's breach of contract claim to the scrap heap. ASC II, 2003 WL 358737, at *3. ASC assigns error and seeks reversal of the summary judgment entered in favor of Synopsys on that claim. We examine the particulars of this contretemps below.

### A. Applicable Legal Standards.

We review the district court's disposition of a motion for summary judgment de novo, scrutinizing the facts in the light most favorable to the nonmoving party. See Garside, 895 F.2d at 48. We will affirm only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

This court has not yet had occasion to determine the appropriate standard for reviewing a trial court's application of the doctrine of judicial estoppel. See Gens v. Resolution Trust Corp., 112 F.3d 569, 572 n.2 (1st Cir. 1997) (reserving the question); Desjardins v. Van Buren Cmty. Hosp., 37 F.3d 21, 23 (1st Cir. 1994) (same). This case requires us to fill that void. We hold that the applicable rubric is abuse of discretion. We ground this holding on four lines of reasoning.

First, the Supreme Court has explained that "judicial estoppel is an equitable doctrine invoked by a court at its discretion." New Hampshire v. Maine, 532 U.S. 742, 750 (2001) (citation and internal quotation marks omitted). On that basis, the abuse of discretion standard seems a natural fit. Cf. Pierce v. Underwood, 487 U.S. 552, 558 (1988) (noting that matters consigned to a trial court's discretion are generally reviewed for abuse of discretion). Second, deferential review often is appropriate for matters in which the trial court is "better positioned . . . to decide the issue in question." Miller v. Fenton, 474 U.S. 104, 114 (1985). Judicial estoppel is such a matter. Determining whether a litigant is playing fast and loose with the courts has a subjective element. Its resolution draws upon the trier's intimate knowledge of the case at bar and his or her first-hand observations of the lawyers and their litigation strategies. Third, abuse of discretion is a flexible standard, and the amorphous nature of judicial estoppel, cf. Desjardins, 37 F.3d at 23 (observing that "judicial estoppel is not extrinsically a matter of fact or law; the issues that arise may turn out to be ones of raw fact, abstract law, or something in between"), places a high premium on such flexibility. See Underwood, 487 U.S. at 562 (suggesting discretionary review for "multifarious and novel question[s], little susceptible . . . of useful generalization"). Last — but far from least — the other courts of appeals to have

-14-

addressed this question have settled unanimously on abuse of discretion review. See, e.g., Coastal Plains, Inc. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 205 (5th Cir. 1999); Talavera v. Sch. Bd., 129 F.3d 1214, 1216 (11th Cir. 1997); McNemar v. Disney Store, Inc., 91 F.3d 610, 616-17 (3d Cir. 1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996); United States v. Garcia, 37 F.3d 1359, 1367 (9th Cir. 1994). A court of appeals should always be reluctant to create a circuit split without a compelling reason, and none exists here.

The fact that this case arises in the summary judgment context does not affect our decision to review the trial court's determination for abuse of discretion. Although there may seem at first blush to be some tension between the plenary review afforded to a summary judgment ruling and the deferential review of a threshold judicial estoppel determination, that tension is more apparent than real. Most evidentiary determinations are reviewed for abuse of discretion, see, e.g., Colasanto v. Life Ins. Co. of N. Am., 100 F.3d 203, 212-13 (1st Cir. 1996); Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1158 (1st Cir. 1996), and the same standard of review typically applies to threshold evidentiary determinations made in connection with summary judgment motions, see, e.g., Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142-43 (1997) (holding that an appellate court should review a trial court's decision to admit or exclude expert testimony at summary judgment

-15-

for abuse of discretion); <u>Schubert</u> v. <u>Nissan Motor Corp.</u>, 148 F.3d 25, 29 (1st Cir. 1998) (holding that if the district court determines the admissibility of evidence for purposes of a summary judgment proceeding, the court of appeals must "review that decision for abuse of discretion prior to turning to [its] <u>de novo</u> summary judgment examination"); <u>EEOC</u> v. <u>Green</u>, 76 F.3d 19, 24 (1st Cir. 1996) (discussing the district court's "broad authority to prescribe the evidentiary materials it will consider in deciding a motion for summary judgment" and conducting appellate review for abuse of discretion). Evidentiary rulings have the potential to shape and winnow the scope of the summary judgment inquiry, and a trial court should have as much leeway in dealing with those matters at the summary judgment stage as at trial. As other courts have recognized, judicial estoppel fits neatly into this taxonomy. <u>See</u>, <u>e.g.</u>, <u>Ahrens</u> v. <u>Perot Sys. Corp.</u>, 205 F.3d 831, 833 (5th Cir. 2000); <u>Johnson</u> v. <u>Oregon</u>, 141 F.3d 1361, 1364 (9th Cir. 1998); <u>Talavera</u>, 129 F.3d at 1216. We adopt that standard.

The abuse of discretion standard is familiar. We will not overturn a nisi prius court's discretionary decision unless it plainly appears that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the proper factors. <u>In re San Juan Dupont Plaza Hotel Fire Litig.</u>, 859 F.2d 1007, 1019 (1st Cir. 1988); <u>In re Josephson</u>, 218 F.2d 174, 182 (1st Cir. 1954) (Magruder, C.J.). This standard is deferential and requires that

-16-

a reviewing court remain mindful of its obligation "not to substitute its judgment for that of the [district court]." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

## B. Choice of Law.

There is a potential choice of law problem lurking in the interstices of this case. A federal court sitting in diversity jurisdiction is obliged to apply federal procedural law and state substantive law. Hanna v. Plumer, 380 U.S. 460, 465 (1965); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). As judicial estoppel appears neither clearly procedural nor clearly substantive, there may be a legitimate question as to whether federal or state law (here, New Hampshire law) should supply the rule of decision.

Having noted this question, we swiftly lay it to one side. The parties have addressed the judicial estoppel issue on the frank assumption that federal standards control and the district court operated on that assumption. See ASC II, 2003 WL 358737, at *3 (citing federal precedents). We have stated before, and today reaffirm, that "[w]here . . . the parties have agreed about what law governs, a federal court sitting in diversity is free, if it chooses, to forgo independent analysis and accept the parties' agreement." Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991). Although we have not heretofore had occasion to apply this tenet with regard to judicial estoppel,

-17-

other courts have done so. See Ryan Oper'ns G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996); Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp., 910 F.2d 1540, 1551 (7th Cir. 1990). Accordingly, we proceed to analyze the issue on the understanding that federal law supplies the rule of decision.

We add, moreover, that we would likely reach this same conclusion even without the parties' acquiescent behavior. It has long been held that federal courts may bypass conflicting state rules of decision in favor of federal standards when positive considerations, such as the presence of a strong federal policy, militate in favor of employing federal standards. Byrd v. Blue Ridge Rural Elec. Coop., 356 U.S. 525, 537-38 (1958). Such countervailing considerations are present here. The aim of judicial estoppel is to protect the integrity of the courts. New Hampshire, 532 U.S. at 750. Where, as here, both the putatively estopping conduct and the putatively estopped conduct occur in a federal case, a federal court has a powerful institutional interest in applying federally-developed principles to protect itself against cynical manipulations. See Hall v. GE Plastic Pac. PTE Ltd., 327 F.3d 391, 395-96 (5th Cir. 2003).

## C. **The Doctrine of Judicial Estoppel**.

"As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with

-18-

a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding." Intergen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003); accord Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000). The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system. New Hampshire, 532 U.S. at 750; United States v. Levasseur, 846 F.2d 786, 792 (1st Cir. 1988). In line with this prophylactic purpose, courts typically invoke judicial estoppel when a litigant is "playing fast and loose with the courts." Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) (quoting Scarano v. Cent. R. Co., 203 F.2d 510, 513 (3d Cir. 1953)).

The contours of the doctrine are hazy, and there is no mechanical test for determining its applicability. See New Hampshire, 532 U.S. at 750-51; Patriot Cinemas, 834 F.2d at 212. Each case tends to turn on its own facts. It is, however, widely agreed that, at a minimum, two conditions must be satisfied before judicial estoppel can attach. See, e.g., Hall, 327 F.3d at 396; Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783-84 (9th Cir. 2001); Levinson v. United States, 969 F.2d 260, 264-65 (7th Cir. 1992); Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 599 (6th Cir. 1982). First, the estopping position and the estopped position must be directly inconsistent, that is, mutually

exclusive.  See Faigin v. Kelly, 184 F.3d 67, 82 (1st Cir. 1999); Levasseur, 846 F.2d at 794.  Second, the responsible party must have succeeded in persuading a court to accept its prior position. Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 13 (1st Cir. 1999); Gens, 112 F.3d at 572-73.  The presence of these elements creates the appearance that either the first court has been misled or the second court will be misled, thus raising the specter of inconsistent determinations and endangering the integrity of the judicial process.  See New Hampshire, 532 U.S. at 750-51.

While it is not a formal element of a claim of judicial estoppel, courts frequently consider a third factor:  absent an estoppel, would the party asserting the inconsistent position derive an unfair advantage?  Id. at 751.  Relatedly, courts often inquire as to whether judicial acceptance of a party's initial position conferred a benefit on that party.  See, e.g., Levasseur, 846 F.2d at 793; Patriot Cinemas, 834 F.2d at 213.  Judicial acceptance and partisan benefit normally are two sides of the same coin (after all, it is unlikely that a party will advance a particular position unless that position benefits its cause).  To the extent that there is a separation, however, it is the court's acceptance of the party's argument, not the benefit flowing from the acceptance, that primarily implicates judicial integrity.  See New Hampshire, 532 U.S. at 750.  Thus, benefit is not a sine qua non to the applicability of judicial estoppel.

-20-

Synthesizing these various points, we recently concluded that, in a prototypical case, judicial estoppel applies when "a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage." Intergen, 344 F.3d at 144. It is against this nuanced backdrop that we must evaluate the ruling below.

### D. **Application of the Doctrine**.

The district court pronounced this to be "precisely the case for which the doctrine of judicial estoppel was created." ASC II, 2003 WL 358737, at *3. After careful perscrutation of a tangled record, we conclude that this determination fell comfortably within the encincture of the court's discretion.

In its opposition to Synopsys's motion to dismiss, ASC asserted unequivocally that it was "not claiming that defendant[] breached an agreement to enter into a long term contract," but, rather, its contract claim was "that LEDA breached its agreement to negotiate in good faith." This was an unambiguous claim for breach of the LOU — no more and no less — and by characterizing the claim in that fashion, ASC danced out of reach of Synopsys's statute of frauds defense. Having skirted that pitfall, ASC then adopted a vastly different position. In its objection to Synopsys's motion for summary judgment, it asserted that its breach of contract claim related not to the LOU but to "a permanent [oral] agreement . . . entered into by LEDA and ASC."

These positions are totally inconsistent. ASC's argument on summary judgment directly contradicts its prior disclaimer of a breach of contract theory based on an alleged parol agreement. While "holding a litigant to his stated intention not to pursue certain claims is different from the 'classic' case of judicial estoppel," such inconsistencies may present an even "<u>stronger</u> argument than do the classic cases for application of the doctrine." <u>Patriot Cinemas</u>, 834 F.2d at 214 (emphasis in the original); <u>accord</u> <u>Wagner</u> v. <u>Prof'l Eng'rs in Cal. Gov't</u>, 354 F.3d 1036, 1044 (9th Cir. 2004) ("Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact, or a legal assertion.").

The second element in the judicial estoppel calculus is present in spades. There is no question but that the district court bought what ASC was selling the first time around. In its order denying Synopsys's motion to dismiss the breach of contract claim, the court stated:

> Synopsys mistakenly assumes that ASC is claiming a breach of an oral agreement to grant it an exclusive marketing agreement . . . . It then challenges this purported claim based on the statute of frauds. In reality, <u>ASC is claiming that LEDA breached its contractual obligation to make a good faith effort to negotiate a permanent marketing agreement that initially covered the United States and later was amended to include Canada</u>.

ASC I, 2001 WL 920029, at *2 n.2 (emphasis supplied). The court then relied on ASC's stated position to repulse Synopsys's statute of frauds assault and allow the breach of contract count to go forward. See id. at *2. To that extent, ASC derived a direct (if temporary) benefit from its original position.

To cinch matters, ASC — if allowed to pursue its nascent oral contract theory at summary judgment — would have gained an unfair advantage. Relying on ASC's prior representation, Synopsys conducted discovery under the warranted assumption that it faced a charge of failing to negotiate in good faith as called for by the LOU. The factual predicate and legal elements of that charge are materially different from the factual predicate and legal elements of the charge that ASC attempted to advance at summary judgment. Synopsys had every reason to assume, based on ASC's previous statements, that the oral contract theory was not in the case. The unfairness is apparent. Had the lower court allowed ASC to go forward with its revisionist claim, it would have been sanctioning what amounted to a sneak attack.

Given this background, we cannot fault the district court's determination that ASC was playing fast and loose. The court's rescript paints a convincing picture of a litigant who took one position, used that position to its advantage at the motion to dismiss stage, and later attempted to switch horses midstream to revive a previously abandoned (and flatly inconsistent) claim. See

-23-

<u>ASC II</u>, 2003 WL 358737, at *1-*3. The court's findings encompass the basic elements of judicial estoppel: the assertion of inconsistent positions and judicial acceptance of the original position. On abuse of discretion review, these findings are fully supportable, as is the court's follow-on inference that ASC was carrying out a game of bait and switch.

In a desperate effort to blunt the force of this reasoning, ASC mounts two additional arguments. First, it maintains that applying judicial estoppel in this case would countermand its right to plead in the alternative. <u>See</u> Fed. R. Civ. P. 8(e)(2). In ASC's view, its first amended complaint should be read as alleging, in the alternative, that LEDA/Synopsys not only breached a duty, rooted in the LOU, to negotiate a permanent agreement in good faith, but also entered into and subsequently breached an oral distribution agreement.

This is artful dodging. Like the Fourth Circuit, <u>Allen</u> v. <u>Zurich Ins. Co.</u>, 667 F.2d 1162, 1167 (4th Cir. 1982), we can envision cases in which the doctrine of judicial estoppel comes into tension with a party's right to plead in the alternative. Here, however, nothing in the first amended complaint suggests an attempt to plead in the alternative — and at the motion to dismiss stage, ASC expressly denied that it was proffering alternative claims. On this record, the "pleading in the alternative" argument is a red herring.

-24-

ASC's final asseveration is that its conduct should be excused because its shift in position was attributable to evidence unearthed during the course of pretrial discovery. To support this asseveration, it points to the deposition of its president, Carl Karrfault, taken in 2002 (well after the denial of the motion to dismiss), during which Karrfault offered an account of the October 5 negotiations that tends to show the formation of a permanent distribution contract.

This is smoke and mirrors. We acknowledge that, in limited circumstances, courts have recognized a good faith exception to the operation of judicial estoppel. See, e.g., Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428 (7th Cir. 1993) (stating that a court may reject estoppel when "the position adopted in the first suit was clearly wrong yet had been advanced in good faith by the party now sought to be estopped"); 18B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4477, at 583-87 (2d ed. 2002) (collecting cases); cf. Intergen, 344 F.3d at 144 ("We would not want to institute a rule [of judicial estoppel] that unduly inhibits a plaintiff from appropriately adjusting its complaint either to correct errors or to accommodate facts learned during pretrial discovery."). For example, that exception may be available if the responsible party shows that the new, inconsistent position is the product of information neither known nor readily available to it at the time

-25-

the initial position was taken. See, e.g., Chaveriat, 11 F.3d at 1428; Konstandinis v. Chen, 626 F.2d 933, 939-40 (D.C. Cir. 1980); see generally Wright, Miller & Cooper, supra § 4477, at 584 & n.57.

In this instance, ASC cannot colorably lay claim to the exception. The newly discovered evidence to which it adverts consists of the deposition testimony of its own president. When a corporation takes a litigation position, we think it both sensible and fair to impute to it the knowledge of its chief executive officer. See United States v. Josleyn, 206 F.3d 144, 159 (1st Cir. 2000); 3 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 811, at 77-80 (perm. ed. 2002). In all events, Karrfault's recollection of the October 5 negotiations was readily available to ASC at the inception of the litigation — and that fact alone renders the exception inapplicable. See, e.g., Czajkowski v. City of Chicago, 810 F. Supp. 1428, 1437 (N.D. Ill. 1993); see generally Wright, Miller & Cooper, supra § 4477, at 586 (noting that a "new understanding of the facts may not excuse a party who has failed a standard of ordinary negligence").

Our decision that the district court acted within the realm of its discretion in estopping ASC from claiming a breach of an oral contract effectively ends this aspect of the case. On summary judgment, ASC abandoned its earlier "failure to negotiate in good faith" theory and the estoppel left it without an arguable ground for opposing Synopsys's motion. Hence, the district court

acted appropriately in entering brevis disposition for Synopsys on the breach of contract count.

## V. THE MOTION FOR SANCTIONS

Synopsys moves for sanctions against ASC and its counsel based upon three theories: (i) that ASC continued to prosecute its appeal even after the appeal became hopeless; (ii) that ASC made misrepresentations in its brief and withheld material facts from this court; and (iii) that ASC violated 1st Cir. R. 30(b)(1) by refusing to cooperate with Synopsys in preparing the joint appendix. Although the question is not free from doubt, we deny the motion.

### A. Frivolousness.

Appellate sanctions are a means of discouraging litigants and their lawyers from either wasting an adversary's time and resources or burdening the court with obviously groundless appeals. See Transnat'l Corp. v. Rodio & Ursillo, Ltd., 920 F.2d 1066, 1072 (1st Cir. 1990); see also Fed. R. App. P. 38. Synopsys insists that this is such a case. In its view, the appeal is frivolous because it is barred by res judicata. See supra Part II.

"An appeal is frivolous . . . when the appellant's legal position is doomed to failure — and an objectively reasonable litigant should have realized as much from the outset." Toscano v. Chandris, S.A., 934 F.2d 383, 387 (1st Cir. 1991). An appeal, arguable at the outset, may become hopeless (and, thus, frivolous),

-27-

by reason of subsequent developments. Persisting in an appeal that plainly has become moot or foreclosed by the operation of res judicata would qualify under this branch of the frivolousness doctrine. See, e.g., Westcott Constr. Corp. v. Firemen's Fund, 996 F.2d 14, 15 (1st Cir. 1993).

In this case, ASC's appeal was arguable when taken. Even after the proceedings in California ripened into a judgment, significant questions remained regarding the status of the supposed settlement, the scope of the state court litigation, and the efficacy of the resulting judgment. See supra Part II. These uncertainties cast doubt over whether this appeal had become a dead man walking. That doubt undermines the claim that persisting in the appeal is sanctionable. See, e.g., Ins. Co. of West v. County of McHenry, 328 F.3d 926, 929-30 (7th Cir. 2003); Carter v. C.I.R., 784 F.2d 1006, 1009 (9th Cir. 1986).

**B. Material Misstatements.**

Synopsys's exhortation that we should impose sanctions on ASC for material omissions in its appellate brief raises a close question. This exhortation relates largely to ASC's argument concerning the trial court's denial of its motion to amend the misrepresentation count. See supra Part III(C). Synopsys is correct in pointing out that ASC failed to mention in its brief that it had opted to withdraw its motion to amend before the district court denied that motion. We have indicated before that

-28-

brazen misrepresentations in an appellant's brief can justify the imposition of sanctions. <u>Thomas</u> v. <u>Digital Equip. Corp.</u>, 880 F.2d 1486, 1491 (1st Cir. 1989). Given that benchmark, we certainly possess the authority to sanction the omission here. <u>See</u>, <u>e.g.</u>, <u>id.</u> (sanctioning an appellant for omitting material facts concerning discovery requests); <u>Ortiz Villafane</u> v. <u>Segarra</u>, 797 F.2d 1, 2 (1st Cir. 1986) (sanctioning an appellant for falsely claiming that he had filed a motion to amend).

ASC's explanation is that the district court never formally ruled on its motion to withdraw the misrepresentation count, leading it to assume that the withdrawal had no legal significance. This is less an explanation than a lame excuse, and we find it wholly inadequate. We note, however, that Synopsys's other misstatement claims lack force. That is significant because the misrepresentation claim was a sideshow — not the main event — and the misleading omission was so easily exposed that it caused neither Synopsys nor this court an iota of extra work. Courts may, as a matter of discretion, decline to impose sanctions. <u>See</u>, <u>e.g.</u>, <u>Oakville Dev. Corp.</u> v. <u>FDIC</u>, 986 F.2d 611, 615 n.5 (1st Cir. 1993). Under the circumstances of this case, we find that course advisable.

## C. **Noncompliance with Local Rules**.

Synopsys's final ground for sanctions relates to 1st Cir. R. 30(b)(1). That rule provides in pertinent part that "[t]he

-29-

parties are encouraged to agree on the contents of the appendix." Id. It then provides for various steps that must be taken in the absence of an agreement.

In the last analysis, the rule merely encourages cooperation; it does not mandate it. Moreover, experience teaches that the encouraged cooperation invariably entails a certain amount of pulling and hauling. As to the alternative steps that ASC was expected to take in the absence of an agreement, the record consists mostly of finger-pointing and is insufficient to allow us to assess the magnitude of the claimed violations. Finally, the rule imposes correlative obligations on an appellee, and the record on appeal is too sparse to warrant pinning the blame for transgressions exclusively on ASC. Cf. Quinones-Pacheco v. Am. Airlines, Inc., 979 F.2d 1, 8 n.9 (1st Cir. 1992) (denying sanctions and observing that "[t]he lemon should not be allowed to reap a reward for calling the grapefruit sour"). Consequently, we eschew any award of sanctions on this ground.

## VI. CONCLUSION

We need go no further. For the reasons alluded to above, we deny Synopsys's motion to dismiss this appeal; affirm the district court's decision to dismiss ASC's misrepresentation claim and to deny the subsequent motion to amend that claim; uphold the entry of summary judgment on the breach of contract claim; and

decline to impose sanctions.  Withal, we direct that costs be taxed in favor of Synopsys (as the prevailing party).

**<u>So Ordered</u>**.