**PSA, INC., et al., Plaintiffs,**

v.

**PUERTO RICO TELEPHONE COMPANY, Defendant.**

**No. CIV.03–1807 JAF.**

United States District Court, D. Puerto Rico.

Sept. 24, 2004.

Barry Goheen, Esq., Nolan C. Leake, Esq., Ranse M. Partin, Esq., King & Spalding LLP, Atlanta, GA, Edwin Quinones, Esq., Quinones & Sanchez, PSC, San Juan, PR, for Plaintiffs.

Joaquin A. Marquez–Tudela, Esq., Drinker Biddle & Reath LLP; Washington, DC, for Defendant.

### *OPINION AND ORDER*

FUSTE, Chief Judge.

Plaintiffs, PSA, Inc.; EJS Payphones, Inc.; and Phoenix Telecom of Puerto Rico, Inc., bring this action against Defendant, Puerto Rico Telephone Company ("Defendant"), claiming violations of 11 U.S.C. §§ 362, 502, 510, and 542 (2004); 15 U.S.C.

§§ 2, 15, and 26 (2004); 10 L.P.R.A. §§ 260, 268, and 269; and 31 L.P.R.A. § 5141. *Docket Document No. 1, Exh. 10.*

Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Docket Document Nos. 1, Exh. 16; 10.* Plaintiffs oppose the motion. *Docket Document Nos. 1, Exh. 18; 12.* Upon review of the pleadings and applicable case law, the court grants Defendant's motion.

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from the complaint. *Docket Document No. 1.* As we must, we "assume all plaintiffs' allegations are true and make all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins., Co.,* 267 F.3d 30, 36 (1st Cir.2001).

Plaintiffs provide telecommunication services through payphones. As payphone service providers ("PSP"), Plaintiffs resell local, interstate, and intrastate long-distance telephone service to the public through payphones they own, operate, service, and maintain in Puerto Rico, among other areas. Plaintiffs are duly authorized providers of payphone services in Puerto Rico.

Defendant PRTC is a Puerto Rico corporation with its principal place of business in San Juan, Puerto Rico. Defendant is a telecommunications company which operates as a local exchange carrier ("LEC"), an interexchange carrier ("IXC"), and a "PSP." LECs, such as Defendant, provide telephone lines and facilities to telephone customers in their service territories via physical connections to their local telephone network and facilities. IXCs provide long-distance telecommunications services.

In Puerto Rico, the Telecommunications Regulatory Board ("Board") regulates the provision of telecommunication services in Puerto Rico, including the provision of payphones. Prior to October 1996, Defendant was the only entity in Puerto Rico that provided payphones with combined local and long distance dialing capabilities. As a result, Defendant had a payphone services monopoly on the island. In September 1996, the Puerto Rico Legislature enacted the Puerto Rico Telecommunications Act of 1996, 27 L.P.R.A. §§ 265–272. The Act established a regulatory framework for the creation and safeguard of competition in Puerto Rico's telecommunications industry, and, in essence, required that Defendant provide fair and equitable access to competitors. Beginning in October 1996, the Board began to certify other companies to provide services in Puerto Rico.

Payphones are typically installed at public and private sites ("sites") by agreement with the site owners and/or operators ("site owners"). These agreements typically consist of a contract between the PSP and the site owner ("site contract"), pursuant to which the PSP usually agrees to pay the Site owner a commission based upon a percentage of the revenues generated by the payphones in return for allowing its installation and operation. To receive telephone service or "dial tone," payphones installed at Puerto Rico sites must be connected through phone access lines to Defendant's central switching office. The interconnection between a payphone facility and Defendant's access line facility is made at a demarcation point at or near the Site. A PSP can wire its payphone instrument into the demarcation point and receive a dial tone once Defendant furnishes.

As an LEC, Defendant is required, pursuant to Federal Communications Commission ("FCC") regulations, to track each

call made from Plaintiffs' payphones. The information Defendant records is used to determine the appropriate dial-around compensation. Dial-around compensation is a payment system created by the FCC to compensate PSPs for toll-free calls made from a PSP's phone without coin or direct payment to the PSP. Defendant is required to send its records regarding all dial around calls made from each of Plaintiffs' payphones to the designated payphone clearing house. Plaintiffs also submit Plaintiffs' records regarding payphone ownership to the payphone clearinghouse. The IXC which provides operator services for each dial-around call remits funds to the clearing house for payment to the appropriate PSP on whose payphone each compensable call was made. After reconciliating the parties' records, the payphone clearing house remits payment of dial-around compensation to Plaintiffs.

As an IXC, Defendant is required, pursuant to FCC regulations, to compensate Plaintiffs for each call made from Plaintiffs' payphones which are routed to Defendant as the long-distance carrier, as the provider of operator services, and where consumers use Plaintiffs' payphones to dial 800 and other toll-free numbers operated by Defendant on behalf of its customers. For each compensable call, as determined in accordance with FCC regulations, Defendant must remit $0.24 to the clearing house to be paid to Plaintiffs after the reconciliation process.

During the course of the business relationship between Defendant and Plaintiffs, Plaintiffs experienced numerous difficulties with Defendant, including:

(a) With respect to Plaintiffs' 400 new line installation requests for sites, Defendant averaged 255 days to get a new line into service after submission of a payphone line request;

(b) Defendant routinely failed and refused, and continues to fail and refuse, to submit the appropriate "carrier files" to the clearing houses required to enable Plaintiffs to be paid appropriate dial around compensation;

(c) Defendant failed and refused to submit funds to the clearing houses to enable Plaintiffs to be paid appropriate dial around compensation for calls where Defendant was the IXC responsible for dial around compensation;

(d) Defendant has payphones located at approximately forty sites in violation of Plaintiffs' exclusive contractual right pursuant to Site contracts to provide payphone services at each of the respective sites;

(e) Defendant failed and refused, and continues to fail and refuse, to complete numerous line repair requests within a reasonable time;

(f) Defendant repeatedly charged Plaintiffs for lines which had no dial tone or were disconnected;

(g) Defendant charged Plaintiffs for providing long distance services despite Plaintiffs having selected the "No–PIC" option on each payphone line request they submitted to Defendant, which should have prevented such charges from being assessed;

(h) Defendant knowingly disconnected Plaintiffs' lines without authorization, and when Plaintiffs requested that Defendant provide Plaintiffs with evidence that Plaintiffs requested cancellation of the line, Defendant refused;

(i) Defendant repeatedly billed Plaintiffs for line charges after service was disconnected and/or took excessive time to disconnect service after Plaintiffs filed a disconnect request;

(j) Defendant knowingly charged rates in excess of those set forth in their

current tariff schedules on file with the Board.

*Docket Document No. 1.*

On December 28, 2001, Defendant submitted an administrative expense claim for $426,373.00 for services rendered after the dates the bankruptcy petitions were filed. On August 5, 2002, Plaintiffs filed an objection to Defendant's administrative claim, as well as counterclaims against Defendant.

Defendant filed a motion to transfer venue to this court, which was granted, and a motion to dismiss, which was argued before the District Court of Delaware on May 14, 2003, and which is now pending before this court.

On July 24, 2003, Plaintiffs' case was transferred to the District of Puerto Rico from the District of Delaware. *Id.* Plaintiffs' allege that: (1) Defendant's acts violate the Bankruptcy Code's automatic stay provision; (2) Defendant's failure to remit the carrier files to the clearing houses has resulted in Plaintiffs' failure to receive funds due them, and that this constitutes a transfer of the estate property; (3) Defendant's conduct justifies equitable subordination of Defendant's administrative claim, prepetition claim, and other claims asserted by Defendant in Plaintiffs' bankruptcy cases, pursuant to 11 U.S.C. § 510(c); (4) Defendant has engaged in exclusionary and anti-competitive conduct which constitutes the unlawful use of monopoly power in violation of § 2 of the Sherman Act, 15 U.S.C. § 2; and (5) Defendant has violated various state laws. *Docket Document No. 1.* Plaintiff seeks actual and punitive damages and attorney's fees. *Id.*

On December 8, 2003, we granted the parties until January 14, 2004, to supplement any pending motions in the case. *Docket Document No. 9.* On January 13, 2004, Defendant supplemented its motion to dismiss. *Docket Document No. 10.* Plaintiffs filed a response on January 27, 2004, *Docket Document No. 12,* and Defendant filed a reply on February 24, 2004. *Docket Document No. 15.* On March 19, 2004, Plaintiff tendered a sur-reply. *Docket Document No. 19.*

## II.

### *Motion to Dismiss Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action against him based solely on the pleadings for the plaintiff's "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In assessing a motion to dismiss, "we accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." *Educadores Puertorriquenos en Accion v. Hernandez,* 367 F.3d 61, 62 (1st Cir.2004) (citing *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998)); *see also Wash. Legal Found. v. Mass. Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). We then determine whether the plaintiff has stated a claim under which relief can be granted.

We note that a plaintiff must only satisfy the simple pleading requirements of Federal Rule of Civil Procedure 8(a) in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Morales–Villalobos v. Garcia–Llorens,* 316 F.3d 51, 52–53 (1st Cir.2003); *DM Research, Inc. v. College of Am. Pathologists,* 170 F.3d 53, 55–56 (1st Cir.1999). A plaintiff need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), and need only give the respondent fair notice of the nature of the claim and petitioner's basis for it. *Swierkiewicz,* 534 U.S. at 512–515, 122 S.Ct. 992. "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could

be granted under any set of facts that could be proved consistent with the allegations.' " *Id.* at 514, 122 S.Ct. 992 (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## III.

### *Analysis*

Defendant moves to dismiss Plaintiffs' complaint, based on the equitable and judicial estoppel because Plaintiffs' alleged claims were not disclosed in Plaintiffs' Schedules and Statements of Financial Affairs, the disclosure statement concerning Plaintiffs' Plan of Reorganization or Debtor's Plan of Reorganization, which became effective on December 5, 2002. *Docket Document No. 10.* Defendant also alleges that Plaintiffs fail to state a claim because only an "individual," and not a corporation, is entitled to recover damages for a willful violation of the automatic stay. *Id.* Defendant also maintains that Plaintiffs have failed to state a claim as to their remaining charges. We address each of Defendant's claims in turn. *Id.*

■ Defendant claims that Plaintiffs' failure to comply with their disclosure requirements requires us to impose judicial and equitable estoppel. *Docket Document No. 10.* Said doctrine bars a party who successfully urges a particular position in a legal proceeding from subsequently taking a contrary position. *See New Hampshire v. Maine,* 532 U.S. 742, 749–52, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); *InterGen v. Grina,* 344 F.3d 134, 144–45 (1st Cir.2003). The doctrine's primary utility is to safeguard the court's integrity by preventing parties from improperly manipulating the judicial system's machinery. *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 33 (1st Cir.2004).

■ The First Circuit has found that, to show equitable estoppel, a party must show that (1) the present legal or factual assertion is inconsistent with the position previously taken, and (2) the court accepted or adopted the assertion made at the earlier proceeding. *Id.* The First Circuit has recognized that other courts have acknowledged a good-faith exception to judicial estoppel, noting that it may be available in limited circumstances, as in where "the new, inconsistent position is the product of information neither known nor readily available to it at the time the initial position was taken." *Id.* at 35.

■ We find that the test is readily met here. Plaintiffs did not disclose the present claims in their Plan of Reorganization. Further, the court ratified Plaintiffs' Reorganization Plan, in essence accepting Plaintiffs' assessment of the assets available to the other creditors. We find this case indistinguishable from other instances where courts have found judicial estoppel. For example, in *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.1988), a Chapter 11 debtor failed to disclose a potential claim against one of its creditors. *Id.* After the court had confirmed the debtor's reorganization plan, the debtor brought an action against the creditor, which could have been the basis for recovery against that creditor, as well as the basis for financial benefits to other creditors had the claim been successfully prosecuted. *Id.* The Third Circuit, in affirming dismissal of the case, found that the debtor's failure to disclose its potential claim during its bankruptcy precluded a later independent action on the debtor's claim. Similarly, in *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.,* 989 F.2d 570 (1st Cir.1993), the plaintiff filed for bankruptcy without listing the action among its assets. The First Circuit found that "having obtained judicial relief on the representation that no claims existed," the plaintiff could not "resurrect them and obtain relief on the opposite basis." *Id.* at 571.

Defendant notes that Plaintiffs first asserted their claims against Defendant on August 5, 2002, when Plaintiffs filed their counterclaims. These counterclaims comprise similar charges as in the First Amended Complaint currently before this court. However, Plaintiffs did not amend their pending Plan of Reorganization, which became effective and binding on all parties in interest four months later, on December 5, 2002.

Plaintiffs counter that they found out about potential claims against Defendant in early 2001, and, although they received formal discovery from Defendant in April 2002, they had only developed their claims against Defendant on August 2002. Plaintiffs aver that "the concealment that [Defendant] alleges took place occurred between eight and thirteen months before the [Plaintiffs] had any fair chance to analyze their claims against [Defendant]." *Docket Document No. 12.* Thus, Plaintiffs maintain, they "did not intentionally conceal any claims against [Defendant] from the bankruptcy court in 2000 and 2001, because they had not been able to evaluate those claims." *Id.*

However, Plaintiffs were not precluded from making their claims known in bankruptcy court before they had fully developed their case. In *Hay v. First Interstate Bank of Kalispell,* 978 F.2d 555 (9th Cir. 1992), the Ninth Circuit found that the debtor learned of the facts that led to the debtor's claims against one of its creditors sometime during the month preceding the month in which the debtor's reorganization plan was confirmed, and four months prior to the close of the bankruptcy case. The Ninth Circuit found that, although "all facts were not known" at that time, "enough was known to require notification of the existence of the asset to the bank-

ruptcy court." 978 F.2d at 557. The failure to give the required notice estopped the debtor from filing the non-disclosed claims. *Id.*

 Plaintiffs cite *Brooks v. Beatty,* 25 F.3d 1037 (1st Cir.1994), an unpublished First Circuit decision.[1] In *Brooks,* the court found that the plaintiff had relied on the counsel of her bankruptcy attorney in filing out her bankruptcy petition. *Id.* The court found that the plaintiff had established "a genuine issue of material fact concerning her bona fides." *Id.* Here, contrary to the factual situation in *Brooks,* Plaintiffs do not suggest that they improperly relied on mistaken assumptions of the case at bar's importance to their bankruptcy petition. Instead, by their own admission, Plaintiffs did not apprise the court that they had garnered enough evidence, and were actually pursuing, claims against Defendant. We note that, contrary to Plaintiffs' assertion, the First Circuit does not require that we find deliberate dishonesty in order to apply judicial estoppel. *Desjardins v. Van Buren Cmty. Hosp.,* 37 F.3d 21, 23 (1st Cir.1994) (finding that the facts did not support judicial estoppel where the plaintiff had not shown neither "deliberate dishonesty" nor "serious prejudice to judicial proceedings or the position of the opposing party").

Finally, Plaintiffs aver that none of Defendant's cited cases were decided on a motion to dismiss and, thus, these issues are more appropriately decided at the summary judgment stage. However, Plaintiffs do not forward, nor have we found, any cases that state that we may not resolve these issues at the motion to dismiss stage. Moreover, Plaintiffs do not aver that there are additional facts that would necessitate that we defer a decision

---

1. A First Circuit panel's "decision to issue an unpublished opinion means that the panel sees no precedential value in that opinion." U.S.Ct. of App. 1st Cir. Rule 36. As such, we do not consider this opinion binding.

on the present issue. We cannot find that this issue is categorically unripe for resolution.

Plaintiffs are forwarding claims before us that they should have brought before the bankruptcy court. As such, we find that Plaintiffs' claims are barred by judicial estoppel. We **GRANT** Defendant's motion to dismiss. *Docket Document Nos. 1, Exh. 16; 10.*

## IV.

### *Conclusion*

In accordance with the foregoing, we GRANT Defendant's motion to dismiss. *Docket Document Nos. 1, Exh. 16; 10.* Judgment to be entered accordingly.

**IT IS SO ORDERED.**