# United States Court of Appeals
## For the First Circuit

No. 18-2064

NORMA EZELL, LEONARD WHITLEY, and ERICA BIDDINGS,
on behalf of themselves and others similarly situated,

Plaintiffs, Appellants,

v.

LEXINGTON INSURANCE COMPANY; AMERICAN INTERNATIONAL GROUP, INC.;
AIG ASSURANCE COMPANY; AIG INSURANCE COMPANY; AIG PROPERTY
CASUALTY COMPANY; AIG SPECIALTY INSURANCE COMPANY; AMERICAN
GENERAL LIFE INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURG, PA.; AGC LIFE INSURANCE COMPANY; AMERICAN
GENERAL ANNUITY SERVICE CORPORATION; AIG CLAIMS, INC., f/k/a AIG
Domestic Claims, Inc.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,* Associate Justice,
and Kayatta, Circuit Judge.

Craig R. Spiegel, with whom Steve W. Berman was on briefs,
for appellants.
Adam H. Offenhartz, with whom James L. Hallowell, Nancy E.
Hart, Peter M. Wade, William T. Hogan III, and Nolan J. Mitchell
were on brief, for appellees.

---

* Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

June 11, 2019

**SOUTER**, **Associate Justice**.  Appellants Norma Ezell, Leonard Whitley, and Erica Biddings entered into structured settlement agreements with Lexington Insurance Company.  By the terms of their settlements, appellants agreed not to pursue their wrongful death and personal injury claims against parties insured by Lexington.  In exchange, Lexington agreed that appellants would receive specific periodic payments from annuities that Lexington would purchase.  Years after these agreements took effect, appellants accused Lexington and other affiliated insurers of misrepresenting the amount appellants would receive from the settlements.  Appellants brought this putative class action in federal court, alleging that Lexington and other insurers made fraudulent misrepresentations to appellants, actionable at common law, and engaged in a scheme to defraud appellants in violation of the Racketeer Influenced and Corrupt Organizations Act, or RICO, 18 U.S.C. §§ 1961 et seq.  Appellants now challenge the District Court's dismissal of their claims as raised for a second time under an amended complaint.  We affirm.

We begin with the language of the relevant settlement documents that are part of the record on appeal.  One settlement agreement applied to Ezell and Whitley; the other, to Biddings.  Under each, Lexington would purchase annuities from various life insurance companies, and the proceeds from the annuities would be remitted to appellants in periodic installments.  As to Ezell and

Whitley, a preliminary memorandum provided that $200,000 would be "annuitized" by Lexington for the purpose of financing periodic payments, Ezell Settlement Memorandum ¶ 2, while a formal agreement indicated the exact amount Ezell and Whitley would receive each month, Ezell Settlement Agreement ¶ 2.2. As to Biddings, a formal agreement indicated that the "total present value" of the periodic payments would be $1,642,000, and it also specified the exact amount she would receive each month. Biddings Settlement Agreement ¶ 2.2.

Appellants respectively allege that they did not receive the promised amounts ($200,000 to be "annuitized" for Ezell and Whitley, and $1,642,000 in "total present value" for Biddings) because the life insurers that sold the annuities to Lexington diverted four percent of those amounts to pay commissions to the brokers who arranged the transactions with Lexington. Since these commissions were not disclosed in the settlement agreements or otherwise, appellants contend that the insurers fraudulently misrepresented the amount appellants would receive from the settlements. This allegation is the basis for appellants' common-law fraud and RICO claims.

The problem for appellants is that the settlement documents, fairly read, did not promise that Ezell and Whitley would receive $200,000, or that Biddings would receive $1,642,000. Rather, they promised only that $200,000 would be "annuitized" for

- 4 -

Ezell and Whitley, and that the "total present value" of the periodic payments to Biddings would be $1,642,000. The amount "annuitized" to produce a periodic payment stream plausibly refers to the amount of money spent to purchase that payment stream, not the amount a beneficiary receives from it. See American Heritage Dictionary of Business Terms 19 (2009) (defining "annuitize" as "[t]o convert a sum of money into a series of payments"). Similarly, the "total present value" of a payment stream plausibly refers to its cost, not to the amount a beneficiary receives. See Black's Law Dictionary 43 (10th ed. 2014) (defining "actuarial present value" as the "amount of money necessary to purchase an annuity that would generate a particular monthly payment, or whatever periodic payment the plan provides . . .").

Here, there is no dispute that Lexington paid $200,000 to purchase the annuities for Ezell and Whitley, and $1,642,000 for the annuities for Biddings.[1] Although the life insurers that sold the annuities to Lexington then allegedly used four percent of these sums to pay commissions to brokers, appellants conceded in their complaint that it is "[i]ndustrywide" practice for brokers

---

[1] This is not, therefore, a case in which Lexington as the settling insurer incurred an obligation to disclose a fact necessary to correct what would be a falsity in some representation in the absence of further disclosure. Cf. Macomber v. Travelers Prop. & Cas. Corp., 804 A.2d 180, 186-187 (Conn. 2002) (reversing the dismissal of a complaint that the settling insurer misrepresented the purchase price of an annuity by failing to disclose a rebate from the broker).

to be paid "a standard sales commission of four percent (4%) of the annuity's cost," Amended Complaint ¶ 31, and that the commission would be paid by the annuity issuer, id. ¶¶ 35, 99(b), 100(b), 120(b), 121(b).[2] Assuming that these allegations are true, as we must at the motion-to-dismiss stage, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), the four-percent commission payment would have been paid by the life insurance companies that sold the annuities, and would have been accounted for as a standard element of the cost of doing business by the life insurance companies and reflected in the market prices that Lexington paid. The commission, in other words, was included in the price of a given annuity in the marketplace, and the appellants have provided no basis to infer that liability insurers in Lexington's position were under any obligation to inform a settlement party of the items of overhead that it was the annuity industry's continuing practice to account for in pricing their products. Because the words "annuitized" and "total present value" simply committed Lexington to pay the amounts stated as necessary to produce the periodic

---

[2] Despite this allegation, at several points the complaint contains the arguably contradictory claim that Lexington's parent company retained the four percent, see Amended Complaint ¶¶ 50, 57, 65, but without specifying that it did so in the transactions with Ezell, Whitley, or Biddings. To the extent this unspecified claim contradicts the other allegations in the record, it fails under the pleading standards of Federal Rule of Civil Procedure 9(b), which requires the plaintiff to "state with particularity the circumstances constituting fraud."

payments specified in the agreements, the annuity companies' payment of brokers' commissions from out of the money Lexington paid for the annuities does not belie the facts that Lexington paid the amounts it quoted and that appellants received exactly those specific annuity payments the agreements had promised, payments that the appellants have not alleged that they failed to receive.

Moreover, even if there were ambiguities in the terms "annuitized" or "total present value," the specific schedules of periodic payments set out in the respective settlement agreements would cure them, for those agreements listed the precise amount appellants could expect to receive each month throughout a stated period. In so doing, the agreements concretely defined what $200,000 "annuitized" and $1,642,000 in "total present value" meant in terms of annuity benefits to be paid to appellants. Because there is no dispute that appellants did receive the periodic payment amounts they were promised in agreements containing no uncorrected misrepresentations, there is no allegation in the pleadings that appellants suffered the kind of harm necessary to make out a case of the statutory or common-law violations claimed.

In short, appellants have failed to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under Rule 9(b), appellants must state "the who, what,

where, and when of the allegedly [misleading] representation" with particularity.  Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir. 2004)).  Here, however, the basic problem with appellants' complaint is not that they failed to state some facts "with particularity."  Fed. R. Civ. P. 9(b).  Rather, it is that the facts they have pleaded "with particularity" on the matters discussed here demonstrate the absence of any "circumstances constituting fraud."  Id.  Accordingly, we affirm the District Court's decision dismissing the amended complaint with prejudice.

So ordered.