Emma Newman *vs.* Eileen Redstone.

Suffolk. May 7, 1968. — May 31, 1968.

Present: Wilkins, C.J., Spalding, Cutter, Spiegel, & Reardon, JJ.

*Employer's Liability,* Employee in position of danger of harm. *Negligence,* Employer's liability: employee in position of danger of harm.

In an action against a householder by a cleaning woman for facial burns which the plaintiff, after falling in the course of her work in the house, received while her head was lying between a radiator and a wall and she was "out" for about ten or fifteen minutes until the arrival of an ambulance, a finding of negligence of the defendant toward the plaintiff was not warranted by evidence that the defendant, who knew that the plaintiff had a problem of epilepsy, upon hearing the plaintiff sigh and fall, went to her immediately, and, on seeing that she was "in an epileptic seizure," called the ambulance and placed a ruler in the plaintiff's mouth "so she wouldn't bite or swallow her tongue," that the plaintiff's arms, legs, and feet were intermittently "kicking and swinging," that the defendant, being pregnant, did not move the plaintiff because of fear "of being grabbed and hurt," and that the defendant did not observe that the plaintiff's face was being burned,

---

although she knew that the radiator was hot when the heat was on but "gave no thought" to the possibility of the plaintiff's being burned.

TORT. Writ in the Superior Court dated December 29, 1961.

The action was tried before *Goldberg*, J.

*Bernard A. Dwork* for the plaintiff.

*Thomas D. O'Brien* (*William H. Shaughnessy* with him) for the defendant.

SPALDING, J. The judge directed a verdict for the defendant in this action of tort. The plaintiff's exception to this ruling brings the case here.

We summarize the evidence as follows: On January 10, 1961, the plaintiff was employed to do cleaning at the defendant's residence. She had been coming there for that purpose for about three years "on an average of once a month or once every two months." The defendant "had been aware that the plaintiff had problems of alcoholism and epilepsy." The plaintiff arrived at the defendant's home on January 10 about 9:30 A.M. and "appeared [to be] a little shaky." The plaintiff proceeded to wash the walls in the bedroom of the defendant's daughter, having been supplied with a stepstool for that purpose. While this work was going on, the defendant, who was in an adjoining bedroom, "heard a sigh and then heard someone fall." She immediately went into her daughter's bedroom where she saw the plaintiff lying on the floor flat on her back with her head facing the ceiling. Her head was between the valve of the radiator and the wall. The defendant went out of the room, called the telephone operator and told her to send an ambulance. In about a minute she returned to the plaintiff and found her in the same position as when she had last seen her. The defendant "knew the plaintiff was in an epileptic seizure." Her "legs and feet were kicking and swinging as well as . . . [her] arms." The defendant put a ruler in the plaintiff's mouth so that she would not bite or swallow her tongue. While the defendant was doing this, the plaintiff, so far as the defendant

could observe, was not being burned at that time and there "was nothing unusual about her face except that she was frothing at the mouth." After putting the ruler in the plaintiff's mouth, the defendant left her lying where she was. About ten or fifteen minutes elapsed from the time when the defendant first observed the plaintiff and the time when the ambulance arrived, and during this time the plaintiff was "out." The defendant was aware that "during all this time the plaintiff was lying against the radiator." But she "gave no thought to the fact that the plaintiff might be burned." The temperature outside that day between the hours of 9 A.M. and 11 A.M. ranged from twenty to twenty-five degrees Fahrenheit. In the winter the heat was on in the defendant's house and she knew that the radiators were always hot when the heat was on. She also knew that "the heat might go on and off depending upon the thermometer in the house."

At the time of the incident described above the defendant, who was pregnant, "was afraid of being grabbed and hurt," although "[i]ntermittently the plaintiff's arms and legs stopped flailing and she was quiet."

The plaintiff was taken to a hospital where it was discovered that she had sustained third degree burns on her left forehead, left upper eyelid, and left side of nose. Prior to the accident the plaintiff had no burns on her face.

The duty owed by a master to his servant where through no fault of the master, but known to him, the servant comes into a position of imminent danger of serious harm while acting within the scope of his employment has received little or no consideration by this court.[1] Elsewhere the authorities seem to be somewhat in conflict. Some courts

---

[1] The only decision of this court that has been called to our attention or that we have been able to find which might have any bearing on the question before us is *Davis* v. *Forbes*, 171 Mass. 548, 553. That was an action by a servant against his master. The declaration contained two counts, the first alleging negligence in furnishing the plaintiff with improper equipment, the second charging neglect to provide medical attendance for the plaintiff. Verdicts were directed for the defendant on both counts. In overruling the plaintiff's exceptions, this court held that the verdict was rightly directed on the first count because the plaintiff had, as matter of law, assumed the risk. In upholding the directed verdict on the second count, the court said at page

have taken the view that the master owes the servant no duty of reasonable care to avert the threatened harm or to provide assistance. Thus it was said by the Supreme Court of Georgia that "[w]hen an employee, without fault on the master's part, becomes placed in a dangerous or painful situation, the master is under no positive legal duty of exercising all reasonable care and diligence to effect such employee's speedy release. Being in no way responsible for the unfortunate occurrence, the master cannot be said to be guilty of a tort if he does not promptly take active steps in coming to the rescue." *Allen* v. *Hixson,* 111 Ga. 460, 463–464. Other cases to the same general effect are: *King* v. *Interstate Consol. R.R.* 23 R. I. 583, 585, 590–591, *Stager* v. *Troy Laundry Co.* 38 Ore. 480, 489–490, *Voorhees* v. *New York Cent. & H. R. R.R.* 129 App. Div. (N. Y.) 780, affirmed 198 N. Y. 558. See also cases collected in note, 64 A. L. R. 2d 1108, 1132–1134.

The trend of modern authority, however, is to the contrary. See *Anderson* v. *Atchison, Topeka & Santa Fe Ry.* 333 U. S. 821, 822–823; *Powers* v. *New York Cent. R.R.* 251 F. 2d 813, 817 (2d Cir.); *Szabo* v. *Pennsylvania R.R.* 132 N. J. L. 331, 332–333; *Rival* v. *Atchison, Topeka & Santa Fe Ry.* 62 N. M. 159, 163–168. See also cases collected in note, 64 A. L. R. 2d 1108, 1125–1146, and Prosser, Torts (3d ed.) p. 337, n. 56.

This trend is reflected in Restatement 2d: Agency, § 512, where the rule is stated: "(1) If a servant, while acting within the scope of his employment, comes into a position of imminent danger of serious harm and this is known to the master or to a person who has duties of management, the master is subject to liability for a failure by himself or by such person to exercise reasonable care to avert the threatened harm. (2) If a servant is hurt and thereby becomes helpless when acting within the scope of employment and

553, "The defendant was under no legal obligation to furnish the plaintiff with medical attendance, even if he had been liable for the injury." We do not regard the *Forbes* case as controlling the case at bar. Moreover, it was doubtless based on English cases decided in the early part of the Nineteenth Century, which we would be reluctant to follow today. See note, 64 A. L. R. 2d 1108, 1117–1118.

this is known to the master or to a person having duties of management, the master is subject to liability for his negligent failure or that of such person to give first aid to the servant and to care for him until he can be cared for by others."

We assume, without deciding, that the quoted rules of the Restatement would be followed in this Commonwealth. Yet, even on that assumption, we are of opinion that the plaintiff's evidence failed to show any negligence of the defendant. "In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action." Restatement 2d: Torts, § 296. While ordinarily the reasonableness of the actor's conduct would be a question of fact, cases "of sudden emergency may arise where on the evidence the trial judge should rule as a matter of law that the defendant's response or reaction to the crisis measured up to that of a . . . [person] of ordinary competence acting under similar circumstances." *Whicher* v. *Phinney*, 124 F. 2d 929, 933 (1st Cir. — concurring opinion of Magruder, J.). We believe this to be such a case. The defendant was by no means heedless of the plaintiff's plight. Upon seeing that the plaintiff was in an epileptic seizure, she immediately called for an ambulance which arrived within ten or fifteen minutes. The defendant further placed a ruler in the plaintiff's mouth "so she wouldn't bite or swallow her tongue." During this period the plaintiff's arms, legs, and feet were intermittently "kicking and swinging." The defendant was pregnant and "her main reason for not moving . . . [the plaintiff] was that she was afraid of being grabbed and hurt." In an emergency "the law does not require one to take the most prudent course that could have been taken." *Barton* v. *New York, N. H. & H. R.R.* 332 Mass. 345, 350–351. In the circumstances it cannot reasonably be said that the defendant was negligent in failing to realize the full extent of the plaintiff's peril and to take steps to avert it. The verdict was properly directed for the defendant.

*Exceptions overruled.*